IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


DAN HALE, et al.                          )
                                          )
v.                                        ) NO. 3-14-1987
                                          ) JUDGE CAMPBELL
TRAVELERS CASUALTY AND                    )
SURETY COMPANY OF AMERICA                 )


MEMORANDUM


Pending before the Court is Defendant's Motion for Summary Judgment (Docket No. 31).

For the reasons stated herein, Defendant's Motion is GRANTED.

INTRODUCTION

This lawsuit, originally brought in state court[1] as a Petition for Declaratory Judgment,

Damages, and Injunctive Relief (Docket No. 1-1), seeks a declaration of the rights and duties of the

parties under the terms of an insurance policy ("the Policy") issued by Defendant, listing Plaintiff

HRC Medical Centers, Inc. ("HRC") as the Named Insured, for the Policy Period of February 1,

2012, to February 1, 2013. Plaintiffs seek coverage under the Policy for a lawsuit filed against them

on October 8, 2012, by the Attorney General of the State of Tennessee in the Davidson County

Circuit Court ("the AG lawsuit"). Defendant has denied coverage on a number of bases and now

asks the Court to enter summary judgment in its favor.

Plaintiffs Don Hale and Dan Hale are the principals and directors of a corporation known

as HRC Medical Centers, Inc., a medically-based business which provided "bio-identical hormone

---

[1]     The case was removed to this Court on October 17, 2014.  Docket No. 1.

replacement therapy" in Tennessee and elsewhere.[2] The State of Tennessee instituted litigation against Plaintiffs in state court, claims which Plaintiffs characterize as "frivolous." Plaintiffs contend that Defendant has a duty, pursuant to the Policy, to defend Plaintiffs in that state court litigation.

SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive

---

[2]     It is undisputed that each of the Plaintiffs has been placed into receivership.

summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595.

## ANALYSIS

Claim Not Covered by the Policy

Under this Policy, a condition precedent to coverage is that any Claim be "first made" during the applicable Policy Period. Defendant argues that the AG Lawsuit is not covered because, under the definitions and terms of the Policy, it is a "Related Wrongful Act" to certain complaints, demands and claims first made prior to the inception of the Policy Period.

The Directors, Officers, and Trustees Liability portion of the Policy defines "Claim" as:

(1) a written demand for monetary or non-monetary relief, (2) a civil proceeding . . ., (3) a criminal proceeding . . ., (4) a formal administrative or regulatory proceeding . . ., (5) an arbitration, mediation or similar alternative dispute resolution proceeding . . . (6) a written request to toll or waive a statute of limitations relating to a potential civil or administrative proceeding;

against an Insured for a Wrongful Act. . . .

A Claim shall be deemed to be made on the earliest date such written notice is received by an Executive Officer.

Docket No. 40, ¶ 2.

Under the Policy, "Wrongful Act" is defined as:

(1) any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by, or any matter asserted against an Insured Person in his or her capacity as such, . . . or (3) any actual or alleged act, error, omission, misstatement, misleading statement, or breach of duty or neglect by, or any matter asserted against the Insured Organization.

All Related Wrongful Acts are a single Wrongful Act for purposes of this Liability Coverage, and all Related Wrongful Acts shall be deemed to have occurred at the time the first of such Related Wrongful Acts occurred whether prior to or during the Policy Period.

Docket No. 40, ¶ 3.

"Related Wrongful Act" is defined as:

All Wrongful Acts that have as a common nexus, or are casually connected by reason of, any fact, circumstances, situation, event or decision.

Docket No. 40, ¶ 4.

The Policy also provides:

All Claims or Potential Claims for Related Wrongful Acts shall be considered as a single Claim or Potential Claim, whichever is applicable, for purposes of this Liability Policy. All Claims or Potential Claims for Related Wrongful Acts shall be deemed to have been made at the time the first of such Claims or Potential Claims for Related Wrongful Acts was made whether prior to or during the Policy Period .
. ..

Docket No. 40, ¶ 5.

Plaintiffs do not dispute that at least 65 complaints were filed against HRC with the Better Business Bureau of Middle Tennessee; seven consumer complaints against HRC were filed with the Consumer Affairs Division of the Tennessee Department of Commerce and Insurance; ten demand letters were sent to HRC; a General Sessions Court complaint was filed by Laquita Moses against HRC; and a News Channel 5 investigation into customer complaints against HRC was initiated; all prior to the February 1, 2012 inception date of the Policy. Defendant contends that these complaints of "Related Wrongful Acts" resulted in the Attorney General's filing of the AG Lawsuit, which contains allegations virtually identical to the customer complaints and is accompanied by 46 Affidavits of disgruntled customers.

Plaintiffs argue extensively that these complaints were meritless, frivolous, and comprised only a very small percentage of HRC's customers. Yet the merits of the complaints and the number of the complaints are irrelevant when the terms of the Policy say "*any* actual *or alleged* act, error,

4

omission, misstatement, misleading statement or breach of duty or neglect by, or *any matter asserted* against an Insured Person" (emphasis added). The Policy does not require more than one complaint or that the complaint be meritorious. Coverage does not depend upon the merits of the complaints.[3]

The Court has not considered the complaints for the truth of the matters asserted therein, so Plaintiffs' hearsay objections are overruled. Fed. R. Evid. 801. The Court may consider the fact that the complaints were filed, a fact admitted by Plaintiffs, on the issue of notice to Plaintiffs. The Court may also consider the contents of the customer complaints, General Sessions lawsuit and AG lawsuit for the purpose of deciding whether they involve "Related Wrongful Acts." The Court must compare the allegations of the complaints with the allegations of the AG lawsuit, not for the truth of the matters asserted, but to see if they "have as a common nexus, or are casually connected by reason of, any fact, circumstances, situation, event or decision."

Thus, Plaintiffs' objection to paragraph 24 of Defendant's Concise Statement of Undisputed Facts (Docket No. 40) is overruled. The Court accepts as undisputed that the customer complaints and General Sessions lawsuit *allege*, among other things, that HRC treatment was not effective and caused severe side effects and complications, that HRC did not inform patients beginning treatment of the risks associated with its treatment but instead guaranteed results, that HRC misrepresented the experience and medical acumen of those administering its treatment to patients and did not allow patients to visit with a doctor, that HRC negligently administered its treatment, that HRC did not inform patients before they began treatment of its billing practices and the fact its treatment was

---

[3]     Plaintiffs also argue certain legal propositions from Tennessee case law concerning an insurer's duty to defend, but here the language of the Policy controls. Plaintiffs entered into a contract with Defendant, and the definitions and terms of that Policy control.

non-refundable, and that HRC's advertising and marketing was false and/or deceptive. Docket No. 40, ¶ 24. Whether those allegations are true is not the issue.

Plaintiffs do not dispute that the AG lawsuit *alleges* that Plaintiffs have saturated the commercial marketplace in Tennessee with false and misleading statements and material omissions about the safety, efficacy, benefits, side effects, and risks of Defendant HRC Medical's alternative regimen of "bio-identical" hormone replacement therapy and its purported superiority over traditional commercial hormone replacement therapy. Docket No. 40, ¶ 26. Whether those allegations are true is not the issue. The AG lawsuit *alleges* that HRC failed to clearly and conspicuously disclose, or purposefully understated, potential serious side effects from their alternative therapy regimen. Docket No. 40, ¶ 29.

Plaintiffs' objection to paragraph 30 of Defendant's Undisputed Facts is overruled for the same reason stated above. The Court is not considering the content of the Affidavits for the truth of the matters asserted therein but for the purpose of determining whether the Affidavits concern Related Wrongful Acts to the earlier complaints. It is undisputed that the AG lawsuit is supported by at least 46 Affidavits of Plaintiffs' customers with virtually identical allegations as those contained in the earlier customer complaints and the General Sessions lawsuit. Whether those allegations are true is not the issue.[4]

Plaintiffs' argument that most of the complaints prior to the Policy Period involved less than $10,000, the deductible amount, is also irrelevant. The language of the Policy does not require a complaint to involve more than the deductible amount in order to be counted as a Wrongful Act or

---

[4]     Accordingly, the opinions of the State's expert in the AG lawsuit as to the validity of the customer complaints has no relevance to the issues of whether Plaintiffs were on notice of those complaints and whether those complaints are related to complaints earlier made.

Related Wrongful Act. Similarly, Plaintiffs' argument that there is no expert evidence of harm to its clients also is not relevant to the issue of "first made" claim.

The Court finds that the plain language of the Policy provides that the allegations of the AG lawsuit are "Related Wrongful Acts" to the previously-filed complaints, to be considered as a single Claim for purposes of the Policy, and deemed to have been first made at the time the first of such Claims for Related Wrongful Acts was made, which was prior to the Policy Period. Therefore, the AG lawsuit is not covered under the Policy.

Material Misrepresentations on the Application

Alternatively, the Court also find that Plaintiffs made material misrepresentations on their Policy application. For the reasons stated above, the Court may consider the *fact* of the customer complaints filed prior to the Policy application in reaching this decision.

One question on the Policy application asked: "Has there been during the past five years, or are there now pending, *any* . . . charges, . . . demands . . . against any Applicant, or any person proposed for this insurance, *whether or not such claim or action would be covered* under the . . . Policy?" Docket No. 40, ¶ 14 (emphasis added). Plaintiffs answered that question "no."

At the time Plaintiffs answered that question "no," there were and had been customer complaints and demands for refunds (even if those refunds would be less than $10,000) against HRC. *See e.g.,* Docket No. 40, ¶¶ 20-23. The Plaintiffs did not have to be aware of "looming lawsuits" or "on notice that the AG might file a lawsuit a year later," as they contend. They only

had to disclose whether there had been, during the past five years or now pending, any charges or demands against any Applicant for this insurance.[5]

Plaintiffs argue that Defendant is unreasonable to consider the "statistically miniscule" number of complaints as falling within the scope of this question. Again, however, the question says "any" - it does not require more than one.[6] Neither does it matter that "most" complaints were dealt with - whether they were "dealt with" is not the issue.

It is undisputed that the Policy application states: "To the extent that any matter required to be disclosed in response to [the above question] constitutes a "Claim" as defined by the Policy, such matter was made prior to the policy period requested hereunder and therefore would be excluded from coverage. Docket No. 40, ¶ 16. "Claim," as stated above, includes a written demand for monetary or non-monetary relief.

Another question on the Policy application states: "Does the Applicant, or any person proposed for this insurance have any knowledge or information of any fact, circumstance or situation related to [the Policy] that could reasonably give rise to a claim against them? Docket No. 40, ¶ 17. Plaintiffs answered "no." *Id*., ¶ 18.[7] Yet Plaintiffs have admitted that they had notice of numerous

---

[5]     Plaintiff argues that the ultimate inquiry in the coverage issue is whether or not a reasonable person would be placed on notice that litigation which would be covered by the policy is reasonably possible in the foreseeable future, based on the presently-known demand or circumstance. Docket No. 36, p. 14. That is not the issue in this case because that is not what this Policy says.

[6]     Plaintiffs ask rhetorically whether Travelers' interpretation of "demands" extends to negative internet statements, comments to television reporters or talk show hosts, or similar, non-formal, subjective, personal opinions. That is not the issue presented in this case.

[7]     The Policy states that any claim arising from any facts or circumstances required to be disclosed under this question is excluded from the proposed insurance. Docket No. 40, ¶ 19.

complaints to the Better Business Bureau and the Department of Commerce and Insurance. Plaintiffs admit that they were aware of the News Channel 5 investigation into their practices, and Plaintiffs note their belief that the impetus behind the filing of the AG lawsuit was former State Representative Phillip Johnson, who was unhappy with the treatment his wife received from HRC. Plaintiffs had notice of facts, circumstances or situations which could reasonably give rise to a claim against them.

CONCLUSION

In light of the above rulings, the Court need not reach Defendant's other arguments. For all these reasons, Defendant's Motion for Summary Judgment (Docket No. 31) is GRANTED. The Court finds that Plaintiffs have no right to coverage under the subject Policy for the AG lawsuit. Judgment shall be entered for the Defendant.

IT IS SO ORDERED.

TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE